(C.D. 2640)

The Mundo Corp.
Arthur J. Fritz & Co. } *v.* United States

United States Customs Court, Second Division

(Decided March 28, 1966)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*John W. Douglas,* Assistant Attorney General (*Sheila N. Ziff* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before Rao, Ford, and Landis, Judges

Landis, Judge: The merchandise under protest herein was invoiced as "Iron Body Clean Outs, San Francisco Pattern" and "Y's." The collector of customs classified it under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as other articles or wares, not specially provided for, composed wholly or in chief value of iron, at 19 per centum ad valorem.

The importers claim that the merchandise is properly dutiable at 10 per centum ad valorem as "cast-iron fittings for cast-iron pipe," under paragraph 327 of the said tariff act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

At the trial, counsel for the respective parties stipulated that the Y's listed on the second page of the invoice in sizes ranging from 2 by 2 inches to 4 by 4 inches, and marked by the examiner in green ink, were in fact properly classifiable as cast-iron pipe fittings for cast-iron pipe, dutiable under the said paragraph 327 at 10 per centum ad valorem.

Remaining in issue before the court, therefore, is only the merchandise described in the invoice as "Iron Body Clean Outs, San Francisco Pattern."

The pertinent parts of the statutes involved are as follows:

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Other, composed wholly or in chief value of iron

&ast; &ast; &ast; _____ 19% ad val.

Paragraph 327 of the Tariff Act of 1930, as modified by T.D. 51802:

Cast-iron pipe of every description, and cast-iron fittings for cast-iron pipe_____ 10% ad val.

The question is whether the merchandise in issue herein should be properly classified under paragraph 327, *supra.*

The record consists of the testimony of three witnesses for the plaintiffs, and the following plaintiffs' exhibits:

Plaintiffs' exhibit 1, a cast-iron body cleanout, San Francisco pattern, representative of the merchandise involved herein.

Plaintiffs' exhibit 2, a cast-iron Y, was withdrawn from evidence after stipulation.

Plaintiffs' exhibit 3, a United States Department of Commerce Standards Bulletin (CS188–59) for cast-iron pipe and pipe fittings, offered to establish that exhibit 1 is known in commercial standards as a "fitting." On page 40, table 54, is a fitting illustrating exhibit 1, with the addition of a plug, as an "iron body ferrule" under the general heading for fittings.

Plaintiffs' exhibit 4, a pamphlet containing Federal specifications for cast-iron soil pipe and pipe fittings, offered to establish that exhibit 1 is known, bought, and sold in the trade as a pipe fitting. The following illustrations are shown on page 33 thereof:

> Figure 26, a cleanout without a plug.
> Figure 25, a plug.
> Figure 27, a cleanout with a plug.

Vernon Appleby, first witness for the plaintiffs, testified that he was formerly general manager and for the past year president of the plaintiff Mundo Corp., having been with this corporation for 9 years; that they are importers of steel and metal products, including cast-iron soil pipe. He said that he is familiar with the items herein invoiced and assessed at 19 per centum ad valorem as "Iron Body Clean Outs, San Francisco Pattern," and has handled the sale of this merchandise to the wholesale jobbing trade on the west coast. He iden-

tified plaintiffs' illustrative exhibit 1 as an iron body cleanout, San Francisco pattern, stated that it is cast iron, and that he has observed it in use. It is used for a dual purpose; it can be used either as a cleanout or in connection with joining soil pipe and steel pipe, and also to close a Y, or at the end of a Y for further extension. He stated that, based upon his dealings in buying and selling cast-iron fittings, together with observing their use at installations, exhibit 1 is regarded as a fitting in the trade.

Mr. Appleby testified that he is familiar with Government specifications relating to cast-iron soil pipe and cast-iron fittings. He identified plaintiffs' exhibit 3 as a publication of the United States Department of Commerce, and stated that his company uses it in the course of its business in order to determine whether its materials conform to Federal specifications; that these specifications refer to cast-iron pipe and cast-iron fittings; and that these specifications, under the designation of "fittings," refer to plaintiffs' exhibit 1 in evidence herein. He identified plaintiffs' exhibit 4 as a document used by his company in the course of its business for the same purpose as that for which it uses Commercial Standard CS188–59, which is exhibit 3, and that exhibit 4 refers to an item such as exhibit 1. On page 1 of exhibit 3, he identified the item listed as "Iron-body ferrule, Table 54," as similar to exhibit 1, and the item shown on page 40 of exhibit 3, table 54, as similar to exhibit 1, with one being slightly lighter in weight, but having identical dimensions. Exhibit 1 does not have a plug. On page 33 of exhibit 4, the item listed as "Iron body ferrules with brass screw plug," is similar to exhibit 1, with the exception of the brass plug.

Mr. Appleby testified that, in his opinion, "A cast iron fitting is an item which will fit into pipe for the purpose of either acting as a closure or furthering it at a later date, or for joining"; that there was nothing in his experience which would lead him to believe that a fitting is an item used solely to join together two pieces of pipe. The witness agreed that exhibit 1 falls within the general category of a fitting as given in the following definition of a fitting from Webster's New International Dictionary, Unabridged, 1934 edition:

\* \* \* 1. Act of one that fits. 2. Anything used in fitting up; necessary fixtures or apparatus, auxiliary parts, as of a boiler or the small parts of a machine, as the fitting of a room; gas fitting.

On cross-examination, Mr. Appleby testified that exhibit 1 is made to standard specifications, the San Francisco code; that—

\* \* \* It's used for dual purposes, used either as a clean out at the end of a line so that in the event they want to reach and clean out the line it could be opened. It's also used in what they call venting where they will join cast iron pipe and steel pipe.

Exhibit 1 is known and described generally as a cleanout, and when so used, is used with a plug. This plug is used to close the top of the cleanout, and is screwed into the cleanout. When used as a cleanout, it would be useless without the plug, but for the purpose of using it in joining cast-iron and screw pipe the plug would not be required; in its use as a cleanout, the plug is used as a closure.

Mr. Appleby testified that the item on page 40 of exhibit 3, table 54, is an illustration of the cleanout with the brass screw plug; that he is familiar with the similar domestic item marketed by his competitors; that they make these drainouts including the San Francisco pattern, to standard specifications; that he is not familiar with the manner in which his competitors sell them, but that his company sells them in bags to wholesale plumbing distributors, and never offers them with the plug. The witness stated that these plumbing distributors sell them either as individual units or with plugs; that they do not necessarily offer them as units with a plug.

The witness further testified that he believes that the illustration on page 40 of exhibit 3 is the only illustration of cleanouts in said exhibit, and that it shows the cleanout with the plug. He stated that in exhibit 4, figure 27, is an illustration of the cleanout with the plug; that figure 25 illustrates the screw plug for figure 26, and figure 27 illustrates them in use together.

Douglas R. O'Hair, the second witness for the plaintiffs, testified that he was vice president of P. D. O'Hair & Co., which is engaged in the wholesale plumbing and engineering supply business; that he has been associated with the company for 35 years in every phase of the business, such as purchasing, sales, stock, accounting, and credit. In sales, he handled items such as exhibit 1, saw them installed and helped install them. He has handled the sale of soil-pipe fittings for 35 years in northern California. He stated that the basic purpose of an item like exhibit 1 is to adapt a soil-pipe hub to a screw plug or a screw pipe; that a soil pipe is used primarily to take away waste matter from apartment houses or homes. He stated his opinion that, in the trade, a soil-pipe fitting would be anything that would be caulked to pipe to be used to join other pipe, whether it be soil pipe or steel pipe; it could possibly be fiber pipe or asbestos pipe. He does not know of any requirement in the trade that a fitting must join two pieces of pipe together. Mr. O'Hair stated that exhibit 1 falls within the definition of the word "fitting" in the trade because in the trade there are two classifications, pipe and fitting, and an article is either pipe or a fitting.

On cross-examination, Mr. O'Hair testified that an item such as exhibit 1 is used as a drainage cleanout or as a vent; that most of the uses he has seen are with a plug; that an item like exhibit 1 is complete in itself. The witness stated that, after exhibit 1 is made fast

by caulking into the hub, the trap screw or plug can be pulled out so that you can put through a cleanout or insert a steel pipe as a vent. The plug, being brass, plastic, or some other material, will eventually corrode from the gases that come out of the sewage or waste. When this happens, the mechanic, in putting his wrench to the brass or plastic plug, invariably tears the threads on the inside or tears off the knob that is being gripped by the wrench and that brass or plastic plug will have to be replaced. The purpose of the plug is to open up the sewer line so that you can put through a rod to clean it out; it is the type of fitting that is used at the end of a line, or at various sections of the line so that you can get in to clean it out.

Mr. O'Hair stated that exhibit 1 can be used with and without the plug and that it can be used with steel pipe; that there are any number of ways that exhibit 1 could be used without the plug, such as putting a wad of paper in exhibit 1, by attaching another pipe for an extension in the air, or it could be used at the end of a line and just left open; that these uses are not necessarily rather unusual, but that he has seen items such as exhibit 1 used primarily with a plug.

On redirect examination, Mr. O'Hair stated that, in selling such an item as exhibit 1, if a customer asked for a cleanout trap, his company would sell him either the plug or the cast-iron body cleanout, whatever he ordered. On re-cross-examination, Mr. O'Hair testified that his company sells more plugs than cleanouts because it is essential to have replacements for damaged plugs.

In answer to questions by Judge Wilson, Mr. O'Hair stated that the primary purpose of the plug is to give access to the pipe for whatever purpose it is desired to get in the pipe.

Henry Globenfelt, the third witness for the plaintiffs, testified that he has been a manufacturer's representative for the past 22 years, handling plumbing supplies, including Y's and T's and items such as exhibit 1 and other fittings of cast iron; that he sells items such as exhibit 1 in San Francisco and northern California and has seen them used. He stated his understanding of the term "fitting" in the trade as "Any object that goes onto pipe is a fitting," and in his opinion, the plug is also a fitting. He testified that he has seen exhibit 1 used as a cleanout body and also to hook a vent, and steel pipe may be screwed into one end to connect it to cast-iron soil pipe.

On cross-examination, the witness verified that he has seen exhibit 1 used with and without plugs, but mostly with plugs; that his company does not publish a catalog illustrating exhibit 1, because the plumbing trade knows well what an iron cleanout body is without a catalog.

The court notes of course that the plaintiffs, in order to sustain their claim under the statute, must show first that the imported items

in controversy are fittings of cast iron, and second, that they are fittings for cast-iron pipe. We note also that it is admitted by the respective parties that the said items (represented by exhibit 1) are of cast iron. This narrows our inquiry to this: Is it a cast-iron fitting for cast-iron pipe within the contemplation of paragraph 327 of the tariff act, *supra*, as claimed by the plaintiffs? Definition of a "fitting" is found hereinbefore in the testimony of Mr. Appleby. The term "ferrule," referred to a number of times in the record, is defined in Webster's New International Dictionary, second edition, 1958:

Plumbing. A kind of connection between a water main and a communication or service pipe.

"Fitting" and "ferrule" are referred to interchangeably herein without significance as concerns the instant issue.

In Summaries of Tariff Information (1948), at page 183, on the subject at bar, as concerns paragraph 327, we find the following:

Cast-iron fittings for cast-iron pipe consist of the curves, joints, tees, reducers, etc. used as connections in cast-iron-pipe systems.

The use of the term "etc." above abridged what might have included *eo nomine* further items in the category of cast-iron fittings, but the list is quite indicative that numerous kinds of the said item are considered under paragraph 327 as cast-iron fittings.

Three well-qualified witnesses have testified that, in their opinion, exhibit 1 is well known in the plumbing trade as a fitting. This is supported by plaintiffs' exhibits 3 and 4, the first being a United States Department of Commerce Standards Bulletin (CS188–59), prescribing standards for cast-iron pipe and pipe fittings; and the second, a pamphlet of Federal specifications for cast-iron soil pipe fittings. Both publications list and illustrate exhibit 1 as and under "fittings." A visual examination of the subject itself lends credence to its classification as a cast-iron fitting.

Cases decided on the subject of cast-iron fittings afford further light on the issue herein. Those cases cited by the parties treating with the significance of the preposition "for" in the tariff sense, we accept but pass over without comment. The plaintiffs have cited for support the case of *Geo. S. Bush Co.* v. *United States*, 3 Cust. Ct. 27, C.D. 195. We have examined it. That case involved cast-malleable-iron couplings, used as fittings for various kinds of pipe. The court there held "couplings" properly classifiable as manufactures of metal, not specially provided for, observing that, since the couplings were not shown to be fittings for cast-iron pipe, they were, therefore, not within the *eo nomine* provision for fittings, as covered by paragraph 327, *supra*.

However, in another case cited by the plaintiffs, *Mitsubishi Shoji*

*Kaisha, Ltd.* v. *United States*, 72 Treas. Dec. 500, T.D. 49226, certain cast-malleable-iron fittings were classified under paragraph 397 of the Tariff Act of 1930 as manufactures of metal, not specially provided for. The importer protested, claiming classification under paragraph 327, for "cast-iron pipe of every description, and cast-iron fittings for cast-iron pipe, * * * including all castings of iron * * * which have been * * * machined, or otherwise advanced in condition * * * but not made up into articles, or parts thereof, * * * castings of malleable iron not specially provided for * * *." The court there was not impressed with the Government's argument that the fittings were manufactures of metal, not specially provided for, within the purview of paragraph 397, stating:

By providing for every description of cast-iron pipe and for cast-iron fittings therefor, the Congress has enacted an exclusive provision for such articles. And where a dutiable provision names an article without terms of limitation, all forms of that article are thereby included, unless a contrary legislative intent plainly appears. *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T.D. 38966. Indeed, not only is the pipe fittings provision without terms of limitation, but by positive and affirmative language its scope is extended to every description of cast-iron pipe and cast-iron fittings therefor. * * *

In harmony with the foregoing case, and with the case at bar, is *United States* v. *Grinnell Co.*, 16 Ct. Cust. Appls. 255, T.D. 42844. The imported merchandise there consisted of various cast-iron pipe fittings, such as tees, elbows, joints, etc., of varying sizes. After being cast, they were machined, that is, threaded, in order to be used for connecting pipes. As imported, they were ready for use and were deemed articles of commerce. The collector classified the merchandise as a manufacture of metal, not specially provided for, under paragraph 167 of the Tariff Act of 1913. The importer protested, claiming classification under paragraph 125 of said act, now paragraph 327 of the 1930 Act, as "Cast-iron pipe of every description, * * * machined, or otherwise advanced in condition * * * but not made up into articles or finished machine parts * * *." The protest was sustained, a rehearing was granted, and additional evidence introduced. The court again sustained the protest in *Grinnell Co.* v. *United States*, 52 Treas. Dec. 605, Abstract 3981. The appellate court, in affirming this court in *United States* v. *Grinnell Co.*, *supra*, stated:

* * * The fittings here are castings which have been machined, or otherwise advanced by processing, subsequent to the casting process. In one sense, of course, each is an article, and but for the existence of paragraph 125, or some other excluding provision, would be classifiable under paragraph 167. That paragraph, however, contains the expression "not specially provided for." We think these fittings are

specially provided for in paragraph 125. They are castings which have been machined. While they are standard stock articles, they have not been "made up" into articles. Nothing has been done other than to process the castings, as the paragraph provides may be done. They are not a part of any particular machine, but may be and are devoted to any one of a great variety of uses, for which, of common knowledge, threaded, cast-iron pipe fittings are commonly used.

Cited in further support are *Jackson Co. et al.* v. *United States*, 2 Ct. Cust. Appls. 475, T.D. 32227; *United States* v. *Leigh & Butler*, 4 Ct. Cust. Appls. 304, T.D. 33517; and *Lang et al.* v. *United States*, 5 Ct. Cust. Appls. 362, T.D. 34552.

Obviously in wording paragraph 327 of the Tariff Act of 1930, "cast-iron pipe of every description, and cast-iron fittings for cast-iron pipe," Congress manifested its intent with generously broad inclusionary language. This would include, therefore, all forms of the article. See *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T.D. 38966.

We consider now the invoiced description of the imported items of merchandise in issue. These are designated in the invoice as "Iron Body Clean Outs, San Francisco Pattern." However, from the testimony of record, it is clear that the item (exhibit 1) does not become a "cleanout" unless and until a plug is added. The record and the briefs are replete with references to the plug, but no plugs were imported, and they are, therefore, outside the issue herein. Further, while the plug would complete exhibit 1 as a cleanout, the plug is not essential to exhibit 1 to constitute it a fitting. Exhibit 1 fits into the definition of a fitting herein on its own merit and without the plug.

The description in the invoice of the item as a cleanout, while convenient no doubt to facilitate the sale transaction at hand, is, nevertheless, a misnomer and premature insofar as indicating its classification for tariff purposes. The court is not bound by the description in the invoice, particularly so in light of the record herein and the exhibit itself before us. While invoice descriptions of imported merchandise have certain evidentiary value (*The American Import Company* v. *United States*, 22 Cust. Ct. 51, C.D. 1158), the true character of the goods will prevail. *Mercantil Distribuidora, S.A.; Joseph H. Brown* v. *United States*, 33 Cust. Ct. 158, C.D. 1648. Nor does a name given to merchandise on the invoice finally fix the status, nature, or character of an importation. *Prosser* v. *United States*, 1 Ct. Cust. Appls. 29, T.D. 30850 (19 Treas. Dec. 878).

As imported, the item is merely an article of cast iron whose utility is obvious. As pointed out in the *Grinnell* case, *supra*, the item may be "devoted to any one of a great variety of uses, for which, of

common knowledge, threaded, cast-iron pipe fittings are commonly used." Whether it later becomes a cleanout, or a vent when joined to another pipe, be it of cast iron, steel, or any other composition, or a jointure with other pipes, is not the issue at bar. Of greater significance is the fact that the record has the uncontradicted testimony of three qualified witnesses, two standard publications, as well as representative exhibit 1 itself, substantiating that this merchandise, admittedly of cast iron, is designed for use on cast-iron pipe, is commonly known in the plumbing trade as a fitting for cast-iron pipe, and, in the opinion of this court, is in fact such.

Therefore, this court finds, based on the foregoing, that the record herein bears proof sufficient to establish that the imported merchandise, although invoiced as "Iron Body Clean Outs, San Francisco Pattern," is provided for *eo nomine*, as cast-iron fittings for cast-iron pipe, within the provisions of paragraph 327 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, and is dutiable at the rate of 10 per centum ad valorem.

Judgment will be rendered accordingly.