**BORDER BROKERAGE COMPANY, Inc.**

v.

**UNITED STATES.**

**Protest 65/3449-24686; C.D. 3270.**

United States Customs Court,
Third Division.
Jan. 31, 1968.

Glad & Tuttle, San Francisco, Cal.
(George R. Tuttle, San Francisco, Cal., of
counsel), for the plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen.
(Morris Braverman, New York City, trial
attorney), for defendant.

Before RICHARDSON and LANDIS,
Judges.

LANDIS, Judge:

Plaintiff has filed protest contesting
the classification of certain merchandise
described in the entry invoices as gal-
vanized conductor pipe elbows, liquidated
by the collector as entered under TSUS
item 610.80, as iron or steel pipe fittings,
not otherwise specified, dutiable at 19
per centum ad valorem. Plaintiff claims
that the pipe elbows are not pipe fittings
but a form of iron or steel pipe dutiable
at 10½ per centum ad valorem under
TSUS item 610.49. These pipe elbows
are connecting bends used with the lead-
ers and gutters one sees on the average
home.

The competing provisions are provid-
ed for in the Tariff Schedules of the
United States in pertinent part as fol-
lows:

SCHEDULE 6.—METALS AND METAL PRODUCTS

\* \* \* \* \* \* \* \*

Pipes and tubes and blanks therefor, all the foregoing
of iron (except cast iron) or steel:

\* \* \* \* \* \* \* \*

Not suitable for use in the manufacture of ball or
roller bearings:
 Other than alloy iron or steel:
 Hollow bars ..........................
610.49 Other ...............................10.5% ad val.

\* \* \* \* \* \* \* \*

Pipe and tube fittings, of iron or steel:

\* \* \* \* \* \* \* \*

610.80 Other fittings .........................19% ad val.

On trial at Seattle, Washington, plaintiff adduced testimony and introduced several exhibits. Exhibit 1 is a representative sample of a 2-inch conductor pipe elbow in the condition imported. Exhibits 2 and 3, short pipe lengths, illustrate what a 10-foot length of the pipe looks like except for size. Exhibit 3, with one end contracted and the other expanded, illustrates how the pipe lengths are joined by inserting the contracted end of one into the expanded end of the joined piece.

Mr. Robert B. Leeson, general manager of Westland Metals, Ltd., Vancouver, B. C., Canada, metal fabricators, testified. He stated that he was familiar with the imported elbows fabricated by Metalcraft (1963), Ltd., Vancouver, a wholly owned subsidiary of Westland Metals, Ltd. He knew how they were made and had himself sold them to wholesale dealers in building supplies.

The imported pipe elbows, Mr. Leeson said, are cut and bent from a 10-foot lengths. The 10 footers are made from galvanized sheet metal run through a roller mill to form a radial 2-inch circle with overlapping edges which are seamed to make the pipe illustrated by exhibit 2. Elbow sections in 9-inch lengths are cut from the 10-foot section and put into an elbow bending machine, designed and built to bend the pipe 72 degrees without breaking the joint of the pipe or marring the galvanized finish. Mr. Leeson testified that pipe elbows like exhibit 1 are used as connecting short lengths of pipe to join the 10-foot lengths around corners. This is done by inserting the contracted end of one piece into the expanded end of the connecting piece which, he said, did not involve a pipe fitting.

On cross-examination, Mr. Leeson stated that exhibit 1 is not known as a pipe fitting in his business, but admitted that it joins two pieces of pipe, namely, the gutter which runs parallel to the roof line and the downpipe (leader) which runs down the outside wall of the house allowing the drain water to run off in a continuous flow. The 10-foot lengths, he said, could be, but never are, sold in a bent or elbowed condition because they tend to flatten out. The 10-foot sections are joined by inserting the contracted end of one into the expanded end of the next joining piece in the same manner as a pipe elbow joins two adjoining pieces of pipe.

Defendant, on cross-examination, produced a pricelist of Metalcraft (1963), Ltd. (exhibit A), which Mr. Leeson said he had prepared. The pricelist identifies and lists items, including pipe elbows, sold under the heading "Galvanized Conductor Pipe and Fittings" and items sold under the heading "Conductor Pipe Accessories." Asked to identify which of the listed items on the pricelist were fittings, Mr. Leeson replied that "the term 'fittings' is rather loosely used," (R. 17) and that "the heading of * * [the] price list, 'Galvanized Conductor Pipe and Fittings' is a general term which applies to the whole thing [pricelist]." The fittings, he said, were actually the items listed under accessories. (R. 18.)

Mr. H. Stanley Lewis, purchasing agent for Palmer G. Lewis Company, wholesalers of building supplies in Seattle, Washington, also testified for plaintiff. He stated that he was familiar with the pipe elbow, exhibit 1, which his company buys and sells along with the other products manufactured by Metalcraft (1963), Ltd. He identified exhibit 1 as a conductor pipe elbow and said he had always called them that as far back as 1923, when he started in the building materials business. Looking at the items listed on pricelist exhibit A, Mr. Lewis testified that the only item he would call a fitting was the conductor pipe nipple (listed under accessories), which he described as a short piece of steel pipe that fits up into a wooden gutter and is joined to the conductor pipe on the other end. Palmer G. Lewis Company catalogues (exhibits 5 and 6) the pipe elbows for distribution to retail dealers in building supplies in Washington, Alaska, and parts of Idaho and Montana. His company, said Mr. Lewis, does not catalogue pipe elbows as fittings, although it does catalogue certain gutter connections,

outside and inside corners, and end cups, as fittings.

Cross-examined, Mr. Lewis stated that the pipe elbows are ordered as conductor pipe elbows or as "ells." (R. 25.) An order for conductor pipe would cover pipe not elbows. Pipe elbows are not, he said, fittings but a form of pipe as are pipe nipples.

 Plaintiff argues that the pipe elbows here "clearly respond" to the common meaning of the terms "pipe" and "tube" rather than the term "fitting." A fitting, says plaintiff, is commonly understood to mean an article that is threaded, citing, Mitsubishi Shoji Kaisha, Ltd. v. United States, 72 Treas.Dec. 500, T.D. 49226, and, also, separately manufactured, at least more so than pipe which has been merely changed in form by bending. In *Mitsubishi* this court found, as plaintiff recites, that threading was a necessary process in the manufacture of cast-iron pipe fittings there before the court. Nowhere did the court hold or even suggest, however, that, for an article to be a fitting, it must be threaded. The common meaning of a tariff term is a question of law for the court to decide. Evidence of a common meaning may be helpful, but is not necessarily binding. Marshall Field & Co. v. United States, 45 CCPA 72, C.A.D. 676. Ordinarily, the court will "chiefly rely upon decisions of the courts and upon the definitions found in dictionaries and other lexicographical authorities." United States v. Mercantil Distribuidora, S. A., Joseph H. Brown, 43 CCPA 111, 117, C.A.D. 617.

Funk & Wagnalls Standard Dictionary, International Edition (1963), defines the terms "elbow," "fitting," and "pipe fitting" as follows:

elbow n. * * * 2 Any outward bend resembling an elbow, as a short angular pipe fitting. * * *

fitting adj. * * * n. 1. The act of adjusting or connecting properly. 2 A fixture or a piece of apparatus. * * *

pipefitting n. 1 A piece of pipe used to connect two or more pipes together. * * *

Webster's Third New International Dictionary (1966 ed.) defines the same terms as follows:

elbow * * * 2: * * * d: an angular pipe fitting: ELL. * * *

fitting n 1 a: * * * b: a small often standardized part (as a coupling, valve, gauge) entering into the construction of a boiler, steam, water, or gas supply installation or other apparatus * * *

pipe fitting n ⋅1: a piece (as a coupling, an elbow, a valve) used for connecting pipe lengths or as accessory to a pipe * * *

The physical appearance of the pipe conductor elbows, represented by exhibit 1 in this case, is demonstratively like that described in the above definitions. It is a potent witness. United States v. The Halle Bros. Co., 20 CCPA 219, T.D. 45995. The testimony of record additionally supports the fact that the use of the pipe elbows is the use which the various dictionary definitions subscribe.

Both sides cite judicial precedents. Plaintiff would have us square this case with the holding in The Davis-Bilt Products Co. v. United States, 28 Cust.Ct. 332, C.D. 1432, and distinguish it from Herbert B. Moller and U. S. Wolfson Bros. Corp. v. United States, 46 CCPA 89, C.A.D. 704, cited and relied on by defendant. We are hard pressed to find any help for plaintiff in the *Davis-Bilt* case. There the merchandise was materially different (tubular steel structures in the shape of doughnuts, processed *after importation* into bends of the arc desired for welding to straight tubes for piping purposes), and the issues under paragraph 397 (articles in chief value of metal) and paragraph 328 (butt-welded steel tubes) did not involve any question of fittings. *Herbert B. Moller,* on the other hand, is not only factually closer to the facts in this case but answers plaintiff's substantive argument about the manufacture of a fitting.

The merchandise in *Herbert B. Moller* consisted of seamless steel elbows bent to 45 degree and 90 degree angles. The elbows were manufactured by heating a length of steel tubing, bending it to the desired angle, cutting to the desired length, beveling the ends, and painting. In use, the elbows were welded into a system of tubing for the transmission of liquids and gases and could be removed only by cutting. The collector classified the steel elbows as articles in chief value of metal dutiable under paragraph 397. *Herbert B. Moller* claimed the elbows were properly classifiable under paragraph 328 as tubes. This court, relying on Green Kay Corp. et al. v. United States, 29 CCPA 216, C.A.D. 193, held that the steel elbows were fittings; that fittings were not tubes; and overruled the protest claim under paragraph 328 (39 Cust.Ct. 315, C.D. 1946). Our appeals court affirmed. Plaintiff tries to distinguish *Herbert B. Moller* from this case on the issues, namely, that in *Moller* there was no question that the pipe elbows were fittings, whereas here, that is the very issue. This is a thin distinction especially where the merchandise we are talking about is connecting pipe elbows and there is not much to distinguish them. As our appeals court said in the *Moller* case:

> Appellants assert that the *Green Kay* case has no application in the instant case since the fittings therein *"had never been pipes nor tubes* but were cast in their final form from molten iron," * * * and when used "did not become a permanent part of the system into which they were incorporated." We do not feel that either the method of manufacture or the use of the merchandise herein constitutes a sufficient basis for such distinction.

A 45 or 90 degree elbow is used for exactly the same purpose in a welded pipe or tube system as a 45 or 90 degree elbow in a system of piping connected by threaded joints. In either case they are fittings and it is not disputed here that the merchandise was known as fittings in the trade. The merchandise here may have been made from tubing instead of molten metal but when it was finished it became fittings and though in a sense tubular, we feel it ceased to be "tubes." We cannot agree that a threaded elbow in a threaded pipe system is not, practically speaking, "a permanent part of the system," as argued. [Emphasis quoted.]

In the instant case the record indicates clearly that the goods are generally known and recognized as fittings, albeit a specialized type, namely welding fittings. In addition, as in the *Green Kay* case, the issue is whether paragraph 328 or paragraph 397 should apply. We feel that the Customs Court was correct in holding that the reasoning and conclusion of the *Green Kay* case is controlling. Though the merchandise then before the court was a *different type of fitting*, the holding was that "tubes" did not include fittings. We therefore affirm the Customs Court's decision that the imported articles are not "tubes" within the meaning of that term as it appears in the portion of paragraph 328 relied on. [Pp. 91, 92; emphasis supplied.]

We find and hold that the pipe conductor elbows of this protest are fittings. The protest is overruled.

Judgment will enter accordingly.

RICHARDSON, J., concurs.