(C.D. 4228)

L & B Products Corp. *v.* United States

---

[19] n. 8, *supra*.

United States Customs Court, First Division

(Decided June 8, 1971)

*Rode & Qualey* (*Ellsworth F. Qualey* of counsel) for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Herbert P. Larsen* and *Joseph I. Liebman*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: The question to be decided in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Japan in 1963 and 1964. The merchandise, described as "spiders", "tripods", "bases", and "columns", has been classified by the customs officials as parts of furniture, not specially provided for, under item 727.55 of the Tariff Schedules of the United States, and was assessed with duty at the rate of 20 per centum ad valorem.

Plaintiff has protested the classification claiming that the merchandise is properly classifiable "as cast iron articles not malleable and not alloyed under Item 657.09 or as pipe and tube fittings of cast iron, not alloyed and not malleable and not for cast iron pipe under Item 610.65 of the Tariff Schedules." Under either of the claimed

tariff items the merchandise would be dutiable at the rate of duty of 3 per centum ad valorem.

The pertinent provisions of the Tariff Schedules of the United States may be conveniently set forth as follows:

Classified under:

"Furniture, and parts thereof, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

727.55   Other _____     20% ad val."

Claimed under:

"Pipe and tube fittings, of iron or steel:
   Cast-iron fittings, not malleable:

\*     \*     \*     \*     \*     \*     \*

   Not for cast-iron pipe:
610.65      Cast iron, other than alloy cast iron__     3% ad val."

"Articles of iron or steel, not coated or plated with precious metal:

   Cast-iron articles, not alloyed:
657.09      Not malleable_____     3% ad val."

Citing the Tariff Commission's *Seventh Supplemental Report*, *Tariff Classification Study* 99 (1963) (General headnote 10(ij)), and the case of *J. E. Bernard & Co., Inc.* v. *United States*, 62 Cust. Ct. 536, C.D. 3822, 299 F. Supp. 1129 (1969), aff'd 58 CCPA 91, C.A.D. 1009 (1971), plaintiff "concedes that the provision for parts of furniture is more specific than one for articles of iron or steel under which Item 657.09 falls." (Plaintiff's brief, pages 9–10) In view of this concession, plaintiff's alternative claim for classification under item 657.09 of the tariff schedules is deemed to have been abandoned, and, therefore, need not be considered further by the court. Hence, the question presented is whether the merchandise was properly classified as parts of furniture under item 727.55, or whether it ought to have been classified as pipe and tube fittings of cast iron under item 610.65 of the tariff schedules.

The record in this case consists of a Pretrial Memorandum and Order, 10 exhibits introduced on behalf of the plaintiff, including a laboratory report from the Bureau of Customs, and the testimony of the vice president of the plaintiff corporation. The seven exhibits representative of the imported merchandise may be identified as consisting of two "tripods", four "bases", and a "column". The "tripods" are three-pronged metal articles that visibly differ only as to size. The four "bases" are also similar except that they too differ as to size, and that one is two-pronged, one is three-pronged and the other two are four-pronged.

On page seven of its brief plaintiff asserts that "[b]ased on the record the imported articles, except for Exhibit 4, the cast iron column, are clearly dutiable under Item 610.65 as claimed provided they are fittings." The foregoing statement, contained under the point heading in plaintiff's brief entitled "The Bases and Spiders Are Fittings", may reasonably be deemed to be an abandonment of the protest insofar as it pertains to the columns as represented by exhibit 4. Since an examination of the column will show that it is clearly not a pipe "fitting", insofar as the protest relates to the columns, it is overruled. The classification question, therefore, is limited to the tripods and bases, also referred to as "spiders" presumably because they are articles with prongs radiating from the centers.

The testimony of plaintiff's witness, and a physical examination of the various articles comprising the merchandise, will leave no doubt that the merchandise in issue is used to make table bases and counter stools. Plaintiff's witness described the making of a table and a stool by the use of the various exhibits in evidence. Notwithstanding the fact that the testimony really described the assembly of several parts for the making of items of furniture, the witness stated that the articles in question were "fittings". This conclusion followed testimony wherein the witness stated that he believed that he was familiar with the term "fittings". He gave his understanding of the term as follows: "Well, fittings, anything that is used to fit together, pipes and other fittings with it." Clearly, in the light of such general and meagre understanding of the term, his opinion that the articles at bar are fittings can not inspire confidence.

Even if one were to concede that the witness was sufficiently qualified to proffer an opinion, it is clear from the witness' "understanding" of the term "fittings", that his response is not entitled to any weight. In direct examination the witness explained that, in his opinion, they were "fittings" because "we use bases with pipe or pipes where we thread them and put them together." In cross-examination, however, it became abundantly clear that the plaintiff was in the "[r]estaurant equipment" business and that the imported articles were used to make counter stools and tables for luncheonettes and restaurants. The witness admitted that the "restaurant trade" was plaintiff's "chief customer". He also admitted that the items in issue were made into counter stools and table bases before they were sold by plaintiff to its customers.

It is true that the witness also testified that plaintiff has sold unassembled articles to "display people" and "traffic sign people". He indicated that he has seen the bases and spiders used by display people for bookracks and magazines, and also for traffic signs and postage stamp meters. It can not be doubted, however, that in testifying as

to such uses, the witness was simply referring to uses deemed to be fugitive in customs litigation.

At page 6 of its brief plaintiff states:

"The classification of the Regional Commissioner as other parts of furniture carries a presumption that the castings are at least chiefly used as parts of furniture (General Headnote 10(ij) to the Tariff Schedules) and plaintiff has not shown that the chief use of such articles is for purposes other than parts of furniture."

In view of plaintiff's candid statement that it "has not shown that the chief use of such articles is for purposes other than parts of furniture", the testimony as to the fugitive use of the merchandise is deemed to be immaterial, and can not affect its proper customs classification.

It follows from plaintiff's admission that the defendant is correct in its assertion that the only testimony given by plaintiff's witness that is relevant to the issues presented "is that which deals with the use of the imported merchandise as parts of furniture and as to the metallic attributes of the merchandise." (Defendant's brief, p. 3) In view of the witness' lack of expertise, as to the metallic attributes of the merchandise, his testimony can be relied upon only insofar as it related to the assembly, use and sale of the merchandise. On these questions it can not be doubted that it merely tends to confirm that which is made obvious by a physical examination of the merchandise, i.e., that it is used to make table bases and counter stools.

Although connected by a tube or pipe, the articles are bases which rest upon or are bolted to the floor and are the supports for the table top or seat of the stool. Such items are readily visible in luncheonettes and restaurants, and their manner of assembly is not difficult to conceive or visualize. Defendant properly points out that the "only purpose of the pipe between is to provide the necessary height to the completed furniture."

A physical inspection of the imported articles demonstrates most clearly that they are not the type or kind of merchandise described or embraced in item 610.65 of the tariff schedules. Under no circumstances can they be held to be "fittings" within the meaning of the claimed article. Several decisions of this court will reveal that the word "fittings" in tariff legislation has a meaning that would not embrace the articles presently before the court.

In *Border Brokerage Co., Inc.* v. *United States*, 60 Cust. Ct. 87, C.D. 3270, 279 F. Supp. 157 (1968), this court was presented with the question whether certain galvanized pipe conductor elbows, used for connecting pipe lengths, were properly dutiable as pipe and tube fittings under item 610.80 of the tariff schedules, rather than as pipes and tubes under item 610.49. In holding that the articles were properly

dutiable as pipe and the tube fittings, Judge Landis examined and relied upon the following several lexicographic definitions:

> *Funk & Wagnalls Standard Dictionary, International Edition* (1963).
>
> "fitting adj. * * * n. 1 The act of adjusting or connecting properly. 2 A fixture or a piece of apparatus. * * *"
>
> "pipefitting n. 1 A piece of pipe used to connect two or more pipes together. * * *
>
> *Webster's Third New International Dictionary* (1966)
>
> "fitting n. 1 a: * * * b: a small often standardized part (as a coupling, valve, gauge) entering into the construction of a boiler, steam, water, or gas supply installation or other apparatus * * *"
>
> "pipe fitting n. 1: a piece (as a coupling, an elbow, a valve) used for connecting pipe lengths or as an accessory to a pipe * * *"

The definitions found in *Audels New Mechanical Dictionary* and in the *Machinery's Encyclopedia* are particularly enlightening. All of the definitions show that all of the articles described as pipe fittings, i.e., bends, tees and plugs, have the common characteristics that they are used as an adjunct to a system of pipes. All of the "fittings" are auxiliary pieces to the main pipe system which is generally designed to transmit either a fluid or gas. It is presumably admitted that no such purpose is served by the articles in the case at bar, and that they are not of the kind or genre associated with a pipe system.

Plaintiff places great reliance upon the case of *The Mundo Corp., Arthur J. Fritz & Co. v. United States,* 56 Cust. Ct. 303, C.D. 2640 (1966), decided under the Tariff Act of 1930. In *The Mundo Corp. et al.* case the question presented was whether articles described as "cast-iron body cleanouts", had been properly classified as articles or wares not specially provided for, composed wholly or in chief value of iron, with duty at the rate of 19 per centum ad valorem. Plaintiff therein claimed that the article was properly dutiable at the rate of 10 per centum ad valorem as "cast-iron fittings for cast-iron pipe". Judge Landis examined several definitions of fittings and quoted the following definitions found in *Summaries of Tariff Information* (1948) at page 183:

> "Cast-iron fittings for cast-iron pipe consist of the curves, joints, tees, reducers, etc. used as connections in cast-iron-pipe systems."

Judge Landis summarized the record in *The Mundo Corp. et al.* case as follows:

> "Three well-qualified witnesses have testified that, in their opinion, exhibit 1 is well known in the plumbing trade as a fitting. This is supported by plaintiffs' exhibits 3 and 4, the first being a

United States Department of Commerce Standards Bulletin (CS188–59), prescribing standards for cast-iron pipe and pipe fittings; and the second, a pamphlet of Federal specifications for cast-iron soil pipe fittings. Both publications list and illustrate exhibit 1 as and under 'fittings.' A visual examination of the subject itself lends credence to its classification as a cast-iron fitting."

The court noted that the utility of the article was "obvious", and emphasized that the record therein contained "the uncontradicted testimony of three qualified witnesses, two standard publications, as well as representative exhibit 1 itself, substantiating that this merchandise, admittedly of cast iron, is designed for use on cast-iron pipe, is commonly known in the plumbing trade as a fitting for cast-iron pipe, and, in the opinion of this court, is in fact such." 56 Cust. Ct. at 311. Hence, the court sustained the protest and held that the cast-iron body cleanout was a cast-iron fitting for cast-iron pipes within paragraph 327 of the Tariff Act of 1930.

Under the circumstances and the record presented in *The Mundo Corp. et al.* case, it would be frivolous to question the soundness of the holding of that case. Yet, it is difficult to see how that case may be regarded as lending any support to the claim of the plaintiff in the case at bar. Surely nothing in the present record can compare with the record presented to the court in *The Mundo Corp. et al.* case. The defendant in the case at bar does not question the rationale of that case, but points out that the merchandise therein was a "special type of fitting" and was "used in a system of pipes as a means of access to the pipe line."

It is also unavailing for the plaintiff to quote from *Mitsubishi Shoji Kaisha, Ltd.* v. *United States*, 72 Treas. Dec. 500, T.D. 49226 (1937), discussed and cited in *The Mundo Corp. et al.* case. In the *Mitsubishi Shoji Kaisha, Ltd.* case "iron pipe fittings comprising reducers, bushings, plugs, elbows, tees, couplings, etc." were held to be within the *eo nomine* provision in paragraph 327 of the Tariff Act of 1930 for "cast-iron fittings for cast-iron pipe". The record there established that "the said articles [were] never used by themselves; that they [were] always used as pipe fittings; that their threaded interior [enabled] them to be connected with gas, water or air pipes; and that the threading operation [was] a necessary process in the manufacture of such fittings." 72 Treas. Dec. at 502.

Since the cases cited the plaintiff dealt with "fittings" for a pipe system, they are factually clearly distinguishable from the case at bar.

Plaintiff suggests that since the bases and spiders are "attached to steel tubes in the manufacture of stools, tables and other articles, they are clearly accessories to a pipe." (Plaintiff's brief p. 8) The mere

attachment of an article to a pipe or tube does not necessarily make that article a "fitting". Defendant quite properly indicates that plaintiff's criterion "is not a justifiable test", and states:

> "If that were the sole standard, then the boiler, at one end, and the radiator, at the other end of a steam pipe would *illogically* be "pipe fittings." (Italics in defendant's brief p. 10)

Suffice it to say that were plaintiff's claim of what is a "fitting" to prevail, one could conjure up an endless array of ludicrous results.

The defendant in its brief has called the court's attention to the presumption of correctness that attaches to a collector's classification, and the dual burden of proof that must be borne by the plaintiff in order to prevail in a customs classification case. *United States (Index Industrial Corp., Party-In-Interest)* v. *National Starch Products, Inc.*, 50 CCPA 1, C.A.D. 809 (1962). The Court of Customs and Patent Appeals has recently elucidated the presumption of correctness and has clarified the important questions pertaining to the burden of proof and preponderance of evidence required to overcome the presumption. *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004 (1970). In the case at bar, there is no doubt that the bases and spiders in issue are not fittings within the meaning of item 610.65 of the tariff schedules. An examination of the record and the pertinent authorities will not only reveal that the plaintiff has not borne its burden of proof, but also that the merchandise has been properly classified.

Since the record and their physical examination reveal that the bases and spiders are parts of furniture, not specially provided for, their classification is sustained and the protest is overruled. Judgment will issue accordingly.