**J. E. BERNARD & CO., Inc.**

**v.**

**UNITED STATES.**

**C.D. 3822; Protest No. 67/18105–3566.**

United States Customs Court, First Division.

May 14, 1969.

Schwartz & Lidstrom, Chicago, Ill. (Joseph Schwartz and Earl R. Lidstrom, Chicago, Ill., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Brian S. Goldstein, New York City, trial attorney), for defendant.

Before WATSON, MALETZ, and RE, Judges.

MALETZ, Judge:

This case involves the proper tariff classification of certain "meter irises" which are components of built-in exposure correcting systems of Bell & Howell eight-millimeter motion-picture cameras. The meter irises were imported from West Germany and entered at Chicago in September and November 1966 by plaintiff as customs broker for the Bell & Howell company. They were classified by the district director of customs in Chicago under item 722.32 of the Tariff Schedules of the United States as other parts for motion-picture cameras, and

assessed with duty at 15 percent ad valorem.

Plaintiff's claim is that by reason of headnote 1(ii) of schedule 7, part 2, subpart F of the tariff schedules, the imports are excluded from classification under item 722.32 and are properly classifiable under item 688.40 as electrical articles or electrical parts of articles, not specially provided for, dutiable at 11.5 percent ad valorem. We hold that the articles were properly classified by the district director under item 722.32.

Quoted below are the relevant statutory provisions:

*Tariff Schedules of the United States*

*Schedule 7, Part 2, Subpart F headnotes:*

1. This subpart does not cover—

    \*   \*   \*   \*   \*   \*   \*   \*

    (ii) electrical pick-up or amplifying devices or other articles which are provided for in part 5 of schedule 6 \* \* \*

    \*   \*   \*   \*   \*   \*   \*   \*

    Photographic motion-picture cameras, with or without sound recording systems:

    \*   \*   \*   \*   \*   \*   \*   \*

    Parts of any of the foregoing cameras \* \* \*:

    \*   \*   \*   \*   \*   \*   \*   \*

    Other:

    722.32   For motion-picture cameras .................. 15% ad val.

    \*   \*   \*   \*   \*   \*   \*   \*

*Schedule 6, Part 5 headnotes:*

1. This part does not cover—

    \*   \*   \*   \*   \*   \*   \*   \*

    (vi) electrical instruments and apparatus provided for in schedule 7.[1]

    \*   \*   \*   \*   \*   \*   \*   \*

688.40   Electrical articles, and electrical parts of articles, not specially provided for ...........11.5% ad val.

10. *General Interpretative Rules.* For the purposes of these schedules—

    \*   \*   \*   \*   \*   \*   \*   \*

    (ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

---

The only witness testifying at the trial —who was called by plaintiff—has been employed as an electronic design engineer by Bell & Howell company for

---

1. As amended by Section 36, Tariff Schedules Technical Amendments Act of 1965, Public Law 89–241 (T.D. 56511), 79 Stat. 933, 940, effective December 6, 1965.

more than seven years. His primary work during that period consisted of designing automatic exposure control systems for Bell & Howell eight-millimeter movie cameras. In that capacity, he designed the electromagnetic parts of three of the four meter irises at issue, and was personally familiar with the nature of the four articles at issue.

His testimony established the following: The function of the meter iris is to keep the exposure on a film constant when taking motion pictures. When film is exposed, and the light in a scene is increased, it is necessary that the iris close to pass less light to the film; if the light is decreased, the iris must open wider to expose more light. In order to perform these functions automatically, the iris plates are connected to meters which in turn are connected to light-sensitive photocells for power. Resistors, thermistors, temperature compensating devices and other electrical components are also employed in these systems where necessary. As the light changes, the "photos in the resistance change" and thus the current through the meter coils changes. When this happens the iris plates connected to the meter are moved until the proper exposure is again obtained. Thus, the photocell, in effect, senses the need for change and the meter control performs the correction.

The meters are built-in or integral components of the exposure correcting systems of the cameras. Their electrical components—which are essential for the operation of the iris—were described by the witness in these terms:

> The one part of the meter iris assembly which carries electrical current is the coil of the meter. This coil, in turn, cannot function alone, it has to work against a spring tension, and it has to work inside a permanent magnetic field, which is either a uniform or nonuniform [sic], as the case may be. The magnetic field, the coil, and the spring of the device, constitutes a direct current galvanometer or meter, of the moving coil type. This assembly is an electrical part; it cannot

function unless an electrical current is introduced through the coil of the device.

The witness' testimony further indicated that the coil is a current-carrying component and that the springs also carry current, although their primary function is "to provide counter torque to the electrical torque caused by the current moving in the coil." The magnet, it was brought out, is not an electrical magnet, but a "permanent" magnet which provides the magnetic field for the electrical functioning of the device. It was pointed out that the meter irises are themselves parts of automatic exposure control systems which have electrical components of their own, namely, a battery, a photocell, and resistors, all of which are essential to the operation of the automatic exposure control system.

Also established by the testimony (on cross-examination) were these additional facts: The merchandise in question is specifically designed for and incorporated into particular Bell & Howell motion-picture cameras. The coil carries the electrical current, as a result of which an electrical torque is produced which is necessary for the functioning of the device. Finally, the witness expressed the opinion that for an article to be an "electrical article," it doesn't have to produce current; it is sufficient that it functions due to an electrical current. He added that in this case the importation is an electrical article since it carries current which is provided by the battery of the system, and which is controlled by the light-sensitive photocell in series with the coil.

From what has been said, the record is clear that the coils carry electrical current; that the springs also carry current; that each coil has to operate inside a permanent magnetic field; that each coil, spring and magnet together constitute a direct current galvanometer, which is an electrical component, and can not function unless an electrical current is introduced through the coil; and that the meter irises are parts of automatic exposure control systems which in turn

have electrical components such as batteries, photocells and resistors. In view of these characteristics, there is no doubt that the meter irises are "electrical." Nor is there any doubt that the meter irises are parts of specifically identifiable eight-millimeter motion-picture cameras.

Against this background, plaintiff argues that the meter irises are provided for in part 5 of schedule 6 either as "electrical articles" or "electrical parts of articles" (both described in item 688.40) and that they thus can not be properly classified under schedule 7, subpart F, item 722.32 as parts of motion-picture cameras. This result, according to plaintiff, is required by headnote 1(ii) of the latter subpart which (as previously set out) provides that that "subpart does not cover * * * electrical pick-up or amplifying devices or other articles which are provided for in part 5 of schedule 6 * * *." Plaintiff emphasizes in this connection that the 1965 amendment to headnote 1(vi) of part 5 of schedule 6 supports its contention that Congress intended to exclude from classification under schedule 7 all "electrical parts" and to have such parts dutiable under part 5 of schedule 6. We cannot agree.

As originally enacted, headnote 1(vi) of part 5 of schedule 6 provided that that part did not cover "electrical instruments, apparatus, *and other electrical articles* provided for in schedule 7." [Emphasis added.] The headnote, however, was amended by the Tariff Schedules Technical Amendments Act of 1965 (note 1, *supra*) so as to delete the words "and other electrical articles." The purpose of removing these words was explained as follows in the House Ways and Means Committee report accompanying H.R. 7969 which eventually became the Tariff Schedules Technical Amendments Act of 1965 (H.Rept. 342, 89th Cong., 1st Sess. (1965), p. 25):

(f) *Parts of electrical articles.*— Headnote 1(vi), part 5 of schedule 6 excludes from part 5 "electrical instruments, apparatus, and other elec-

trical articles provided for in schedule 7." A question has been raised as to whether the term "other electrical articles" in this headnote is *intended to preclude classification in such part 5 of certain electrical "parts" which would otherwise clearly fall within the specific provisions thereof. Headnote 1(vi) of part 5 is not intended to create an exception to general headnote 10(ij). Therefore, in order to avoid possible conflict between such headnote provisions, it is proposed to delete the words "and other electrical articles" from headnote 1(vi).* * * * [Emphasis added.]

The Senate Finance Committee report on the bill made the following comment on the deletion (S.Rept. 530, 89th Cong., 1st Sess. (1965), p. 29):

(f) *Parts of electrical articles.*— This provision clarifies the tariff treatment of electrical parts by assuring that these parts (such as batteries, electronic tubes, bulbs, etc.) which are specifically provided for will not be treated as parts of other articles under schedule 7 where the rates may be different. * * *

We think it clear from this that Congress did not intend by the 1965 amendment to exclude *all* electrical articles or parts therefor from classification under schedule 7, as argued by plaintiff. To the contrary, what was intended was to insure that electrical parts which are *specifically provided for* in schedule 6— such as batteries (items 682.95, 683.10 and 683.15), electronic tubes (items 687.- 50–687.60), etc.—would not be treated as parts of other articles under schedule 7 where the rates may be different. As the House report emphasized, the amendment would thus preclude any possible conflict between headnote 1(vi) of part 5, schedule 6, and general headnote 10 (ij) which specifies (as we have seen) that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a *specific provision* for such part." [Emphasis added.]

Furthermore, because of this last consideration that general headnote 10(ij) is fully applicable here, it necessarily follows that the meter irises—which are concededly integral parts of motion-picture cameras—are properly classifiable under item 722.32 as parts for motion-picture cameras rather than under item 688.40—a "basket" provision which covers electrical articles and electrical parts of articles, not specially provided for. For, as is made plain by the legislative history, the intent of general headnote 10(ij) is that a provision for "parts" is to be deemed more specific than a provision for "articles, not specially provided for," and therefore prevails over such a "basket" provision. See J. E. Bernard & Co. v. United States, 59 Cust.Ct. 31, 35–36, C.D. 3060 (1967). Thus, the Tariff Classification Study, Seventh Supplemental Report (Aug. 14, 1963) states (p. 99):

> General headnote 10(ij)—*Parts*. A provision for "Parts" does not prevail over a specific provision for such part. Thus, *a provision for "parts" is more specific than a provision for "articles, not specially provided for"*, but is not more specific than provisions such as the following for: "springs" (item 652.85), "illuminating articles" (items 653.30–.40), "pumps" (items 660.90–661.15), etc. [Emphasis added.]

Even more basic, plaintiff's claim is foreclosed by headnote 1(vi) of part 5 of schedule 6 which specifically states (as set forth earlier) that that "part does not cover electrical instruments and apparatus provided for in schedule 7." In this connection, the Tariff Classification Study, Explanatory and Background Materials, Schedule 6 (Nov. 15, 1960) states (p. 308):

> Item 688.40 is the "basket" provision in part 5 for "electrical articles, and electrical parts of articles." *This item does not apply to any article classifiable as a machine and the provision for electrical parts of articles applies to articles identifiable as parts of machinery or apparatus but not as parts*

*of a particular machine or apparatus.* [Emphasis added.]

■ On this latter aspect, a review of the lexicographic authorities provides compelling indication that motion-picture cameras come within the common meaning of the term "apparatus" as used in the headnote. For example, Vol. 17, Encyclopaedia Britannica (14th ed., 1947) provides as follows (p. 800):

> The cameras used for various purposes are discussed under the section *Apparatus;*

and further provides (p. 819):

### APPARATUS

> *Photographic apparatus may conveniently be discussed under the following heads:*—(1) Cameras and Enlargers, (2) Stands, (3) Lenses, (4) Light Filters, (5) Instantaneous Shutters, (6) Exposure Meters, (7) Prepared sensitive plates, films and papers, (8) Developing and Printing gear, and (9) Studio and Dark room appliances. * * * [Emphasis added.]

Funk & Wagnalls New Standard Dictionary of the English Language (1952 ed.) defines the term "apparatus" in these words (p. 134):

> apparatus 1. Any complex device or machine designed or prepared for the accomplishment of a special purpose * * *.

Webster's Third New International Dictionary (1963 ed.) defines the term "apparatus" as follows (p. 102):
apparatus * * *

> 2a: a collection or set or materials, instruments, appliances, or machinery designed for a particular use * *

> b: any compound instrument or appliance designed for a specific mechanical or chemical action or operation * * *.

In United States v. Wyman & Co., 2 Ct.Cust.App. 440, 443, T.D. 32200 (1912), the term "apparatus" as defined in Web-

ster's New International Dictionary is quoted with approval as follows:

\* \* \* \* \* \*

2. Things provided as a means to some end.

3. Hence: \* \* \* any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery; mechanism.

We conclude from the foregoing that motion-picture cameras come within the common meaning of the term "apparatus." Further, since meter irises are parts of specifically identifiable eight-millimeter motion-picture cameras, it is self-evident that such irises are "parts of a particular \* \* \* apparatus" and hence are excluded from classification under item 688.40.[2]

The protest is overruled. Judgment will be entered accordingly.

---

2. In view of this conclusion, it is unnecessary to reach the question as to whether a meter iris is itself an "apparatus."