(C.D. 3926)

IDEAL TOY CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 19, 1969)

*Sharretts, Paley, Carter & Blauvelt* (*Eugene F. Blauvelt* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader* and *Andrew P. Vance*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: These cases which were consolidated for trial involve the question as to the proper tariff levy on certain miniature car chassis (about four inches in length and one and one-half inches in width) and miniature car bodies (of slightly larger dimensions) that were imported from Hong Kong. They were classified by the government under item 737.90 of the Tariff Schedules of the United States (19 U.S.C. § 1202) which covers toys and parts of toys not specially provided for, and were assessed duty of 35 percent ad valorem.

Plaintiff-importer insists that this classification is erroneous and claims that the miniature car chassis are properly classifiable either under item 678.50 as machines not specially provided for, dutiable at 10 percent ad valorem, or alternatively under item 688.40 as electrical articles not specially provided for, dutiable at 11.5 percent ad valorem. In addition, plaintiff claims that the miniature car bodies are properly classifiable under item 774.60 as "articles not specially provided for of * * * plastics," dutiable at 17 percent ad valorem. We hold that the imported car chassis and car bodies were correctly classified under item 737.90 as parts of toys, and therefore overrule the protests.

The pertinent provisions of the tariff schedules are as follows:

Classified under:

Schedule 7, Part 5, Subpart E:

Subpart E headnotes:

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such

articles are more specifically provided for elsewhere in the tariff schedules * * *—

\* \* \* \* \* \* \*

2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults. [Emphasis in original.]

\* \* \* \* \* \* \*

Toys, and parts of toys, not specially provided for:

\* \* \* \* \* \* \*

737.90 Other _____ 35% ad val.

Claimed under:

The car chassis

678.50 Machines not specially provided for, and
    parts thereof_____ 10% ad val.
    [or alternatively]
688.40 Electrical articles, and electrical parts of
    articles, not specially provided for_____ 11.5% ad val.

The car bodies

Articles not specially provided for, of rubber or plastics:

\* \* \* \* \* \* \*

774.60 Other _____ 17% ad val.

The facts shown by the record are these. The chassis and car bodies with which we are concerned were imported in separate cartons packed two gross to a carton. Eighteen different makes or styles of car bodies (e.g., Corvette, Impala, etc.) were imported during the 1964–65 period, and all car bodies, no matter what make, were imported in similar packing cartons.

The basic concept in merchandising the imported articles—which were advertised by plaintiff as the Motorific line ("The New Quick-Change Motor Toy")—was to offer separate bodies, separate chassis and separate motors so that a child could make his own car and change the style of his car by changing the 18 different styles of car bodies while using the same chassis. The chief feature of the Motorific line was thus the interchangeability of the 18 different bodies upon the chassis so that the child was able to have available different makes of cars as might suit his momentary fancy.

The chassis and car body were packaged and sold to the ultimate consumer in individual plastic containers. Other packaging contained various combinations of motor, chassis and car bodies, but the individual articles were never combined before sale to the retail purchaser. The consumer, in turn, inserted a motor and batteries in the chassis and

snapped on the car body. The car so assembled was chiefly used for the amusement of children.

The chassis was dedicated to use with the car body and could not be used for any other purpose. Similarly, the car body could not be used for any purpose other than with the chassis. Neither the chassis nor the body was a plaything by itself.

The chassis and car bodies were displayed and advertised for retail sale on stands supplied by plaintiff, utilizing the packaging developed for the Motorific line. Under all forms of packaging, plaintiff in 1964 sold 935,928 chassis; 1,761,186 car bodies; and 695,805 electric motors. In 1965, the sales figures were 3,749,561 chassis; 4,260,793 bodies; and 3,937,201 motors.

In this factual setting, plaintiff states that since in neither 1964 nor 1965 were an equal number of chassis, bodies and motors sold, it cannot be said that the imported chassis and imported bodies are "parts" of an entirety. It argues that the imported car chassis and car bodies "are used in conjunction with each other from time to time in the same manner as a bat, ball and baseball glove." "The chassis and body," it insists, "are neither an entity nor parts of an entity any more than a cup and saucer are entities or parts of entities." We find this entire argument without merit. For a bat, a ball, a baseball glove, a cup and a saucer, each is actually and commercially a *complete* article or entity in and of itself. By contrast, neither the miniature chassis nor the miniature car body is such a complete article or entity or has any use other than as a part of the Motorific toy car.

Nor can we agree that *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619 (1954), is determinative here—as plaintiff urges. In *Donalds* an inhaler consisting of a holder, cotton core and inhalant, imported in a completely assembled condition, was held to be an entirety for tariff purposes. In so finding the court stated (p. 315):

> * * * If what is imported as a unit is *actually* and *commercially* two or more *individual entities* which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent. [Emphasis added.]

Plaintiff argues that applying the above rule to the present situation (1) the commercial and actual individual entity of chassis and

car body remains intact even when temporarily snapped together by
the user; and (2) the temporary coupling together does not create
an entity so predominant that the separate article has been sub-
ordinated to it within the rule of *Donalds*. The difficulty again with
this argument is that (as we have seen) neither the chassis nor
the car body is actually or commercially a complete article or entity
in and of itself. Neither has an independent commercial use save as
part of a toy. Rather, they are imported for the single purpose of
being coupled together and functioning (after the batteries and motor
are added) as a toy. Plaintiff argues further that the chassis and car
bodies cannot be parts of toys because they "never become a part of a
commercial entity or, indeed, of any permanent entity." In other words,
plaintiff seems to be denying the existence of a fixed or permanent
article (i.e., a "toy"), presumably on the basis that the user can switch
body styles. Yet the entire concept behind the Motorific line is to
provide a toy with interchangeable parts. This is emphasized by the
following excerpts from plaintiff's catalogs:

INTERCHANGEABLE-BODY FEATURE MEANS
MULTIPLE SALES FOR YOU!

Twelve favorite body styles fit chassis, offer endless combinations.
Each body, a mere 4½ inches long, is accurate to the last detail,
will satisfy the most discerning buyer. All bodies come in a variety
of popular, lustrous color, have detailed chrome plated trim,
and clear headlights and windows. Each is individually boxed in
clear plastic, and is labeled by make and year. Stack them for mass
display and multiple sales.

\*　　\*　　\*　　\*　　\*　　\*　　\*

BONUS PACK STARTS COLLECTION

\*　　\*　　\*　　\*　　\*　　\*　　\*

To get a boy "on the road" with MOTORIFIC! the Bonus Pack is the
ideal starter set. Package is printed in brilliant colors, describes
how to play with MOTORIFIC! on the back. Package lists all body
styles on both sides.\* \* \*

\*　　\*　　\*　　\*　　\*　　\*　　\*

IT'S TERRIFIC! IT'S FUN! IT'S . . .
M O T O R I F I C !

THE NEW DIMENSION IN MOTOR TOYS AT PRICES KIDS
CAN AFFORD!

\*　　\*　　\*　　\*　　\*　　\*　　\*

A "quick-sell" pack for the "quick-change" motor toy!

MOTORIFIC GIFT PACK

Junior car enthusiasts will "flip" for this Motorific Gift Pack
Set. Each set includes Motorific body, chassis and motor, plus a
conversion pin.\* \* \*

When it is considered, in short, (i) that the chassis and bodies in issue were dedicated for use with each other in conjunction with the Motorific motor toy and could not be used for any other purpose; (ii) that they were designed to be sold and were in fact sold in conjunction with that toy; and (iii) that they were necessary for the Motorific motor toy, the conclusion is inescapable that they constitute "parts" of toys within the meaning of item 737.90. See e.g., *Mattel, Inc.* v. *United States*, 61 Cust. Ct. 75, C.D. 3531, 287 F. Supp. 999 (1968), and cases cited.

We turn now to several additional arguments advanced by plaintiff. One such argument is made in the context of general headnote 10(ij) which provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, *but does not prevail over a specific provision for such part.*" [Emphasis added.] Relying on this general headnote, plaintiff contends that even if it were to be assumed that the imported articles are parts of toys, they are not dutiable under item 737.90 (as classified by the government) since (1) the chassis are assertedly *specifically* provided for under item 678.50 as machines not specially provided for or, in the alternative, under item 688.40 as electrical articles not specially provided for; and (2) the car bodies are assertedly *specifically* provided for under item 774.60 as articles not specially provided for of plastic. However, "as is made plain by the legislative history, the intent of general headnote 10(ij) is that a provision for 'parts' is to be deemed more specific than a provision for 'articles, not specially provided for,' and therefore prevails over such * * * 'basket' provision[s]." *J. E. Bernard & Co., Inc.* v. *United States*, 62 Cust. Ct. 536, 541, C.D. 3822, 299 F. Supp. 1129, 1133 (1969). See also *J. E. Bernard & Co.* v. *United States*, 59 Cust. Ct. 31, 35–56, C.D. 3060 (1967). Thus, the *Tariff Classification Study, Seventh Supplemental Report* (Aug. 14, 1963) states (p. 99):

> General headnote 10(ij)—*Parts.* A provision for "parts" does not prevail over a specific provision for such part. Thus, *a provision for "parts" is more specific than a provision for "articles, not specially provided for"*, but is not more specific than provisions such as the following for: "springs" (item 652.85), "illuminating articles" (items 653.30–.40), "pumps" (items 660.90–661.15), etc. [Emphasis added.]

Manifestly, the provisions for articles not specially provided for of rubber or plastics (item 774.60); machines not specially provided for (item 678.50); and electrical articles not specially provided for (item 688.40) are all general descriptive provisions, i.e., basket clauses which do not specially describe one type of article. They are scarcely the "specific provisions" which would invoke the operation of general

headnote 10(ij). Indeed, were such general basket provisions deemed "specific provisions" within the meaning of general headnote 10(ij), no imported merchandise could ever be classified as a "part." For in such a circumstance, a basket provision would prevail over a "part" provision—which would mean that even though an importation is a "part," it would necessarily be classifiable under a basket provision.

Plaintiff argues further that the provisions under which it claims—i.e., items 678.50, 688.40 and 774.60—are more specific than item 737.90 covering parts of toys and that headnote 1 of schedule 7, part 5, subpart E, therefore, requires that the importations be classified under the claimed provisions rather than under item 737.90. We do not agree. The provision under which the articles in question were classified—i.e., parts of toys—is a use provision. The provisions under which the chassis and bodies are claimed dutiable are general descriptive provisions. In the absence of a contrary legislative intent (which is not present here), such a use provision prevails over the claimed provisions since the latter provisions are broad general descriptive provisions that do not specially provide for or specifically describe the goods in question. See e.g., *United States* v. *Lansen-Naeve Corp.*, 44 CCPA 31, C.A.D. 632 (1957), and cases cited at pp. 33–34; *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, 158–59, C.A.D. 623 (1956).

The protests are overruled. Judgment will issue to that effect.