(C.D. 3993)

POYNTER PRODUCTS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 8, 1970)

*Siegel, Mandell & Davidson* (*Harvey A. Isaacs* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Herbert T. Posner*, trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves the question of the proper tariff classification of importations from Japan that were described on the invoice as "Novelty Goods (Toys) B/O Miniature Record Players." They were classified by the government under item 737.90 of the Tariff Schedules of the United States as other toys not specially provided for and assessed duty at the rate of 35 percent ad valorem.

Plaintiff claims that the articles are not toys but rather are phono-

graphs and, as such, are properly dutiable under item 685.32 as phonographs at the rate of 11.5 percent. The claim is based primarily upon the contention that the importation is a child's version of a phonograph and thus is a "junior edition" dutiable under the *eo nomine* provision for the article.

Set out below are the pertinent provisions of the tariff schedules:

General Headnote 10(ij)

> 10. <u>General Interpretative Rules.</u> For the purposes of these schedules—
>
>     *     *     *     *     *     *     *
>
> (ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

Schedule 7, Part 5, Subpart E, Headnotes 1 and 2

> 1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules * * *
>
>     *     *     *     *     *     *     *
>
> 2. For the purposes of the tariff schedules, a "*toy*" is any article chiefly used for the amusement of children or adults.

Classified under:

> Toys, and parts of toys, not specially provided for:
>
>     *     *     *     *     *     *     *

737.90      Other _____    35% ad val.

Claimed under:

> Radiotelegraphic and radiotelephonic transmission and reception apparatus * * * record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all the foregoing, and any combination thereof * * * and parts thereof:
>
>     *     *     *     *     *     *     *

685.32      Record players, phonographs, record changers, turn-tables, and tone arms, and parts of the foregoing_____    11.5% ad val.

There is no controversy as to the facts. The importation is a coffin-shaped article measuring about 4½ inches in length, 2½ inches in width, and 2 inches in depth. In its imported condition it is made up

of a plastic acoustical chamber, a turntable, a battery receptacle, a motor, a needle receptacle and a speed control adjustment, but not a volume control. It was designed so that when a pen-light battery was inserted and the lid closed, it would automatically play a record for 15 seconds and then shut itself off.[1]

Thirty-nine records, each measuring 2⅜ inches in diameter, were produced for the imported article. Some records in the collection did not include the entire song as composed, while others included complete original songs that were composed specifically for that purpose. Each record played for 15 seconds.

After importation, the article was removed from the export carton and placed in a display box with three records and then sold as a complete package. In addition, records were displayed and sold individually, as were a record rack and a record case. The suggested retail price of the importation and three records was $6.00, while a single record was sold for about 29 cents.

The article was displayed and sold in the toy departments of department and discount stores, and in stationery stores which handled novelties, toys and stationery items. It was advertised as "Mighty Tiny," the "World's Smallest Record Player"—"Oh So Tiny . . . And It Really Plays." Additional characteristics were described in plaintiff's sales catalogue, as follows:

> Imagine carrying a record player and a complete record collection around in your pocket! It's hard to believe, but it's true. This "cute" number has a fantastic appeal to all children. They can carry it anywhere . . . school, outdoors, club meetings . . . it's a GO GO everywhere.
>
> Mighty Tiny Record Player operates on only one penlight cell for hundreds of plays. No visible tone arm to handle or break. When lid is closed over record it automatically plays and automatically stops at end of recording. It's FABULOUS! Mighty Tiny Records are only 2⅜" in diameter and come complete with beautiful authentic-looking full color lithographed record jackets. So, get with it man . . . Go Go Mighty Tiny . . . the KIDS sure are!

It appears that the importations were bought and used by children, a majority of whom were in the 7-8-year bracket. According to the one witness who testified, the president of plaintiff company, the "only real use" of the article consisted of children putting the record on and dancing. "They liked to dance and hear the music."

Turning now to the legal principles, it is axiomatic that the government's classification under the toy provision—item 737.90—gives rise to a presumption that the importation is a plaything chiefly used for

---

[1] The automatic shut-off feature was incorporated because it was found that otherwise children would leave the record player running—which would cause the batteries to run down.

the amusement of children (or adults). Thus, plaintiff, in order to prevail, was required to establish by a preponderance of the evidence that at or immediately prior to the date of importation the involved or like articles were not playthings chiefly used for the amusement of children (or adults). E.g., *William Shaland Corp.* v. *United States,* 60 Cust. Ct. 181, 182, C.D. 3308, 280 F. Supp. 457, 458 (1968). We conclude that plaintiff has not met this burden.

First, from examination of the importation and listening to it play a record, the conclusion is inescapable that it is a mere plaything for the amusement of children rather than a junior-edition phonograph.[2] This is evident from the construction of the article; its diminutive size; its poor tonal quality; its lack of music appreciation value; the fact that it cannot be employed for any serious purpose; and the fact that it can only play records which have been specifically designed for it, and then only for 15 seconds. Indeed, we think it clear that the interest which children displayed in the use of the importation is the character of amusement which a child gets from a toy or from an article which is essentially a plaything. Cf. *United States* v. *Louis Wolf & Co.,* 26 CCPA 243, 249, C.A.D. 23 (1938). It is true that the article is in the form of a miniature representation of a phonograph. But "[e]very toy is from the very nature of the article a miniature representation of another and more substantial article." *Davies, Turner & Co.* v. *United States,* 3 Ct. Cust. Appls. 110, 111, T.D. 32363 (1912). Nor is it without significance that the importations were identified on the invoices as "Novelty Goods (*Toys*) B/O Miniature Record Players," [emphasis added][3] and were displayed and sold in the toy departments of retail establishments.[4]

Very much in point is *Skoja Manufacturing Company, et al.* v. *United States,* 33 Cust. Ct. 359, Abstract 58387 (1954). Involved in that case was a round metal box with a plate for putting on a record; a swing-over arm to which was attached a needle; and a wind-up mechanism. The article was identified as a gramophone; it was not electrical and had no loudspeaker or other attachment to amplify sound. It had two speeds, slow and fast, and six-inch records were used exclusively. The majority of users would sometimes sing when the record was being played. A witness, who had heard the records, indicated that they were "songs, what children usually consider music, lullaby songs." The importations were classified by the collector as

---

[2] A sample has important evidentiary value in toy cases. See e.g., *Wilson's Customs Clearance, Inc.* v. *United States,* 59 Cust. Ct. 36, 40–41, C.D. 3061 (1967).

[3] See e.g., *W. T. Grant Company* v. *United States,* 38 CCPA 57, 63, C.A.D. 440 (1950).

[4] Although not determinative, the manner in which a merchant displays and sells his goods can have obvious probative value. E.g., *Davis Products, Inc., et al.* v. *United States,* 59 Cust. Ct. 226, 230, C.D. 3127 (1967) ; *New York Merchandise Co., Inc.* v. *United States,* 62 Cust. Ct. 38, 44, C.D. 3671, 294 F. Supp. 971, 976 (1969).

toys under the provisions of paragraph 1513 of the Tariff Act of 1930, as modified, and assessed duty of 35 percent.[5] Plaintiffs claimed that the articles were classifiable as gramophones under paragraph 1542, dutiable at 15 percent. On the basis of the foregoing record, the court overruled the protest, holding (i) that plaintiffs had failed to overcome the presumption of correctness attendant upon the collector's classification; and (ii) that, in fact, plaintiffs' evidence—as recited above—"tends to show chief use of the merchandise by children for their amusement * * *." 33 Cust. Ct. at 361. There are some obvious physical differences between the merchandise in *Skoja* and that here. But that does not diminish the fact that the article was held dutiable as a toy notwithstanding that—as here—it contained, in miniature, the essential elements of a phonograph.

Plaintiff, however, places major reliance on *Louis Wolf & Co., et al.* v. *United States*, 19 CCPA 132, T.D. 45258 (1931), which arose under the Tariff Act of 1922. In that case, certain small, cheaply constructed phonographs, with horns, disks, needle holders, springs, governors, and all the other essential parts required to make them play the diminutive records provided for them were classified by the collector as toys. The court held that this classification was erroneous and that the importation was properly dutiable as a phonograph. In reaching this conclusion, it relied on the definition of a toy as enunciated in *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T.D. 31115 (1910), and quoted from the *Illfelder* definition as follows (19 CCPA at 133):

> In common speech, and as popularly understood, *a toy is essentially a plaything, something which is intended and designed for the amusement of children only*, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally. [Emphasis in original.]

The court in *Louis Wolf* then concluded (19 CCPA at 134):

> We conclude upon the record before us that the merchandise involved is a phonograph. It may be a poor one, but, as far as we are advised, it lacks no essential element necessary to entitle it to be regarded as such for tariff purposes. We do not think it is a plaything such as was referred to in the *Illfelder* case, *supra*. Although it may be chiefly, if not almost exclusively, used by children, it would seem to fall into the class of articles referred to in *United States* v. *Field*, 12 Ct. Cust. Appls. 543, T.D. 40738,

[5] The term "toy" was defined in paragraph 1513 of the 1930 act to mean "an article chiefly used for the amusement of children * * *."

as "junior editions," that is a small article designed for a small person. To hold the article at bar a toy would, to our way of thinking, necessitate the holding of children's small, substantially built bicycles to be toys, since they can only be used by children. There are toy bicycles which are readily distinguishable from small bicycles used by children and which are not toys.

However, as pointed out in *Skoja*—and quite correctly, we think— "[t]he reasoning employed in the foregoing quotation cannot be applied in the present case because, in this case, unlike any of the cases hereinabove referred to, we are controlled by the statutory definition of the term 'toy,' set forth in paragraph 1513 of the Tariff Act of 1930"—i.e., an article chiefly used for the amusement of children. 33 Cust. Ct. at 361. Considering that the definition of a toy in the tariff schedules is (to the extent presently relevant) identical with that in the Tariff Act of 1930—namely an article chiefly used for the amusement of children—the distinction thus drawn in *Skoja* is equally applicable here. This is to say that the *Illfelder* test, as incorporated in *Louis Wolf*—to the extent that it defines a toy as something which is intended for the amusement of children only, and is reasonably fitted for no other purpose—has been superseded by the statutory definition of a toy—in both the Tariff Act of 1930 and the tariff schedules—as an article chiefly used for the amusement of children.[6]

Concluding, as we do, that the import is a toy, it is unnecessary to decide whether it is also a phonograph. For even if it is, once the record demonstrates that it is also a toy, the all-embracive language of subpart E, headnote 1 (quoted previously) requires its classification as a toy. See e.g., *William Shaland Corp.* v. *United States, supra,* 60 Cust Ct. at 184, 280 F. Supp. at 460.

Finally, plaintiff argues that even assuming the imported article is chiefly used for the amusement of children and is thus a toy, it is only *part* of a toy because it lacks one essential part—the record which was designed for it and with which it was always sold. Thus, argues plaintiff, though the complete commercial entity, may be a toy, the absence of the record in the item, as imported, relegates it to merely part of that toy and thus excluded from invasive subpart E, headnote 1. See also General Headnote 10(ij). In such circumstance, plaintiff says, the specific provision in item 685.32 for phonographs must prevail. We see no merit to the argument since the importation is not merely a part of a toy but the article itself. Cf. *Ideal Toy Corporation* v. *United States,* 63 Cust. Ct. 406, 409, C.D. 3926, slip op. Nov. 19,

---

[6] It may also be noted that in *Louis Wolf* the merchandise was not exclusively used by children ; in fact, there was testimony that like merchandise was used in the factory for testing phonograph records. 19 CCPA at 134. By contrast, in the present case the record indicates that the importations were exclusively used by children.

1969, p. 6, appeal pending. Under the tariff schedules a "part" of an article is defined as "a product solely or chiefly used as a part of *such article*." General Headnote 10(ij). [Emphasis added.] In the present case, there is in existence no "such article" with which the import is solely or chiefly used as a part. And the fact that it is used in conjunction with another article is in the present situation quite immaterial. For example, a plastic pistol that shoots rubber-tipped darts is a toy, and not a part of a toy, even though actually used only with the darts. Similarly, an electric train without tracks is no more a part of a toy than an automobile without spark plugs is a part of an automobile.[7]

The protest is overruled. Judgment will be entered accordingly.

(C.D. 3994)

---

[7] *Mattel, Inc.* v. *United States,* 61 Cust. Ct. 75, C.D. 3531, 287 F. Supp. 999 (1968), on which plaintiff relies on this aspect is simply not in point. In that case wigs for dolls were held to be parts of dolls (and thus classifiable as wigs) rather than doll accessories. The issue manifestly was entirely different from the one here.