(C.D. 4065)

MONTGOMERY WARD & COMPANY v. UNITED STATES

---

[4] Tariff Classification Study, Schedule 6, page 201,

United States Customs Court, First Division

(Decided August 25, 1970)

*Schwartz & Lidstrom (Barnes, Richardson & Colburn, Earl R. Lidstrom* and *Richard C. King* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Steven R. Sosnov* and *Velta A. Melnbrencis,* trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves the tariff status of articles invoiced as telephone switchboards that were imported from Italy in 1965. They were classified by the government under item 737.90 of the Tariff Schedules of the United States as "Toys, and parts of toys, not specially provided for: * * * Other" and assessed with duty at the rate of 35 percent.

Plaintiff claims alternatively that the import is dutiable (1) at the rate of 17.5 percent under item 684.62 as electrical telephonic equipment and apparatus; (2) at 14 percent under item 684.64 as other electrical telegraph and telephone apparatus and parts thereof; or (3) at 11.5 percent under item 688.40 as electrical articles and electrical parts of articles, not specially provided for.

Quoted below are the pertinent provisions of the tariff schedules:

Classified under:

Schedule 7, Part 5, Subpart E headnotes:

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, but the provisions of this subpart do not apply to—

\*    \*    \*    \*    \*    \*    \*

2. For the purposes of the tariff schedules, a *"toy"* is any article chiefly used for the amusement of children or adults.

\*    \*    \*    \*    \*    \*    \*

Toys, and parts of toys, not specially provided for:

\*    \*    \*    \*    \*    \*    \*

| 737.90 | Other | 35% ad val. |

Claimed under:

Schedule 6, Part 5:

Electrical telegraph (including printing and typewriting) and telephone apparatus and instruments, and parts thereof:

| | | |
|---|---|---|
| 684.62 | Telephonic apparatus and instruments and parts thereof_____ | 17.5% ad val. |
| 684.64 | Other _____ | 14% ad val. |
| | *  *  *  *  *  *  * | |
| 688.40 | Electrical articles, and electrical parts of articles, not specially provided for_____ | 11.5% ad val. |

The imported article is a three-piece set consisting of a master switchboard or phone and two extension phones, each with about 65 feet of connecting cord. The switchboard is called by depressing a button on one of the telephones and the operator at the switchboard then makes a connection with any of the other instruments, and a conversation can then take place. The entire apparatus is operated by batteries which generate the electrical current necessary for communication.

A single witness, Dudley Wells—who was called by plaintiff—testified. He stated that he had been a buyer in plaintiff's toy department for the last ten years where his duties included arranging for the purchase of merchandise displayed in plaintiff's catalogue or retail stores. He was familiar with the importation in question, having arranged for its purchase in Italy and its listing in plaintiff's catalogue. He stated that he had observed the use of the importation frequently— in which connection he indicated that he had seen it used as an intercommunication device between the various buying offices of plaintiff. Asked about any other practical use, he indicated that it could also be used in the home as a communication device. On cross-examination, he added that the importation could be used for the amusement of children and/or adults, though he himself had only seen it used as a communication device.

Wells also testified that the imported set was not sold at retail in plaintiff's stores but only through its catalogue; that it was displayed in plaintiff's 1965 Christmas catalogue with other toys, separately from other items; that it was listed in the catalogue in a section captioned "Special Index of Toys"; and that its selling price was $14.99. He further testified that some 7,000 sets had been sold by plaintiff, and that other similar articles of the same type were on the market in this country prior to the date of importation of the sets in question. Finally, he stated that the dials on the phones and switchboard are mainly for appearance and do not have any utilitarian purpose.

At the outset, it is to be noted that even if the record established that the imported article comes within the provisions of items 684.62, 684.64 or 688.40 covering electrical telephonic apparatus, other electrical telephonic apparatus, or electrical articles, if the record also established that the importation is a toy, the all-embracive language of subpart E, headnote 1 (quoted previously) would require its classification as a toy. E.g., *Poynter Products, Inc.* v. *United States*, 64 Cust. Ct. 293, C.D. 3993 (1970); *William Shaland Corp.* v. *United States*, 60 Cust. Ct. 181, 184, C.D. 3308, 280 F. Supp. 457, 460 (1968). Thus, to overcome the presumption of correctness attendant upon the government's classification, plaintiff's burden is to prove that the importation is not a "toy" (which term is defined in headnote 2 of subpart E as an article chiefly used for the amusement of children or adults). Put otherwise, plaintiff must show that the article in issue is chiefly used for something other than the amusement of children or adults.

It also is important to note that General Interpretative Rule 10(e) (i) of the tariff schedules provides that "a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined."

Against this background, plaintiff bases its case on the testimony of Wells that he had frequently observed the use of the imported merchandise for the purpose of communication. However, the only *specific* example of the use of the merchandise which he had seen was in plaintiff's own buying offices. Inasmuch as some 7,000 items were imported and to the witness' knowledge other similar articles were on the market in the United States prior to the present importations, observations of repeated use of what appears to be one and the same article can scarcely establish the chief use of the importations, much less the chief use of merchandise of the same kind or class to which the importation belongs. In other words, use in plaintiff's own office cannot be considered positive evidence of such use across the United States.

Moreover, there is nothing in the sample to show that it is not and cannot be used chiefly for amusement of children. Examination of the sample shows it is an article which would clearly appear to be quite easy for children to operate since its use essentially involves simply picking up the various receivers and depressing various buttons. The fact, too, that the dials on the phones have no functional purpose but are mainly for appearance provides further indication that the set was designed as an imitation article for amusement purposes rather than as an actual communications system.

Various other factors also support the classification of the mer-

chandise as a toy. For one thing, it was purchased by plaintiff's witness—who was a toy buyer. Second, it was marketed and represented by plaintiff as a toy. Thus, plaintiff's catalogue depicts it as a toy and describes it as a "Phone System That Really Works . . ." Almost Like The Real Thing!" "Useful, Entertaining, Fun"; "For 'make believe' . . . children learn phone etiquette while having fun at play." The manner in which a merchant markets and sells his goods—while not determinative—has obvious probative value. E.g., *Montgomery Ward & Co.* v. *United States*, 62 Cust. Ct. 718, C.D. 3853 (1969). Nor is there anything in the record to show, as plaintiff argues, that the imported articles fall within the "junior edition" concept. See *Poynter Products, Inc.* v. *United States, supra,* 64 Cust. Ct. 296.

In Summary, we hold that plaintiff has not overcome the presumption of correctness attendant upon the government's classification of the import as a toy. The protest is overruled and judgment will issue accordingly.