J.C. PENNEY PURCHASING CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Consolidated Court No. 81–12–01631

Before DiCARLO, *Judge.*

---

[10] Plaintiffs argue that the ITC's treatment of evidence regarding competition by Italian imports was unlawful. The ITC properly refused to weigh causes of injury. As the House Ways and Means Committee Report on the Trade Agreements Act of 1979 emphasized:

> Any such requirement has the undesirable result of making relief more difficult to obtain for those industries facing difficulties from a variety of sources, precisely those industries that are most vulnerable to subsidized or dumped imports.

H.R. Rep. 317, 96th Cong., 1st Sess. 47 (1979).

(Decided November 25, 1986)

*Frank W. Schattschneider* for plaintiff.

*Richard K. Willard*, Assistant Attorney General, *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Civil Division, Department of Justice (*Susan Handler-Menahem*) for defendant.

DiCARLO, *Judge:* Plaintiff challenges the United States Customs Service (Customs) classification of small, plastic replicas of cash registers incorporating a battery-operated calculator, invoiced as "electronic cash register, calculator" and "electronic cash register." Customs classified the articles either under item 737.95, Tariff Schedules of the United States (TSUS) as toys, not specially provided for * * * other or under item 676.20, TSUS, as calculating machines specially constructed for multiplying and dividing. Defendant asserts that the classification of some of the merchandise under item 676.20, TSUS was erroneous and that all the articles should be classified as toys under item 737.95, TSUS.

Plaintiff contends that the merchandise is not a toy because it is not chiefly used for the amusement of children since it is reasonably capable of use for some practical purpose other than amusement and does not provide the type of amusement required for classification as a toy within the meaning of the TSUS. Plaintiff offers, in order of preference, three alternative classifications.

Initially, the Court notes that item 737.95, TSUS is in schedule 7, part 5, subpart E of the TSUS. Headnote 1 of subpart E provides that "[t]he articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, * * *." The term "toy" is defined in headnote 2 of subpart E as "any article chiefly used for the amusement of children or adults."

Plaintiff argues, however, that if the merchandise is shown to have uses other than for the amusement of children or adults, it can not be classified as a toy. Plaintiff relies upon *Illfelder* v. *United States*, 1 Ct. Cust. App. 109, 111, T.D. 31115 (1910) where the court defined a toy as "something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose." (Emphasis in original).

Plaintiff's reliance upon the *Illfelder* test is misplaced. The court in *Illfelder* created a definition for the term "toy" because no definition was provided in paragraph 418 of the Tariff Act of 1897. Later courts continued to rely upon the *Illfelder* test in the absence of a statutory definition. *See, e.g., United States* v. *Meier & Frank Co.*, 5 CCPA 208, T.D. 34330 (1914).

With passage of the Tariff Act of 1930, courts abandoned the *Illfelder* test because paragraph 1513 of that Act provided a controlling statutory definition. *See United States* v. *Louis Wolf & Co.*, 26 CCPA 243, 248–49, C.A.D. 23 (1938); *Skoja Manufacturing Co.* v. *United States*, 33 Cust. Ct. 359, 361, Abs. 58387 (1954); *A. Ponnock & Sons* v. *United States*, 51 Cust. Ct. 196, 198, Abs. 67972 (1963); *S. Rosenberg Christmas Corp.* v. *United States*, 51 Cust. Ct. 283, 285, Abs. 68170 (1963).

The court in *Poynter Products, Inc.* v. *United States*, 64 Cust. Ct. 293, 298, C.D. 3993 (1970) held the reasoning of the *Skoja* court to be equally applicable to the TSUS. According to the court, the *Illfelder* test "—to the extent that it defines a toy as something which is intended for the amusement of children only, and is reasonably fitted for no other purpose—has been superseded by the statutory definition of a toy—in both the Tariff Act of 1930 and the tariff schedules—as an article chiefly used for the amusement of children." (Footnote omitted). *Poynter Products*, 64 Cust. Ct. at 298.

The question before the Court is whether the merchandise is chiefly used for the amusement of children or adults making it a toy for purposes of the TSUS. Chief use is statutorily defined as "the use which exceeds all other uses (if any) combined." General Interpretative Headnote 10(e)(i).

Plaintiff relying on the *Illfelder* test offered evidence that the merchandise might have a reasonable use other than as a toy. Having rejected the *Illfelder* test, the Court weighs this evidence of possible alternative uses only in making its determination of how the merchandise is chiefly used.

Plaintiff's first witness testified that, although the merchandise could be used as a calculator if necessary, he would not purchase it if in the market for a "normal" calculator. The Court finds that the cash register design of the merchandise makes it an unreasonable, impractible substitute for a calculator.

Plaintiff also called as witnesses two teachers to support its contention that the merchandise serves the practical purpose of educating children. These witnesses used the merchandise in their classrooms approximately five years after entry at the behest of plaintiff's attorney. Both witnesses used the merchandise in northern New Jersey on an experimental basis with a very limited number of children.

No evidence was offered that the subject merchandise was being used in schools as a teaching tool at the time of importation or that the articles were imported for this purpose. Defendant's witness testified, on the other hand, that the merchandise would not function effectively as a teaching tool for children of the ages prescribed by plaintiff because its calculating function was not self-correcting, and children would not know if what they calculated was correct.

The Court considers the merchandise itself. It is accepted that representative samples of the merchandise are potent witnesses.

*See, e.g., United States* v. *Halle Bros. Co.*, 20 CCPA 219, 221, T.D. 45995 (1932). In the present action, the testimony as to actual use is limited such that the sample is instrumental in finding the primary use of the merchandise. *See Oxford International Corp.* v. *United States*, 70 Cust. Ct. 217, 223, C.D. 4433 (1973) (finding that "even where testimony as to actual use is very limited, the character and design of the sample itself may compel a finding as to the primary use of the merchandise," citing *Leaf Brands, Inc.* v. *United States*, 70 Cust. Ct. 66, C.D. 4409 (1973)).

The Court finds the samples offered to be small, plastic replicas of cash registers designed for children to use in play. To make the merchandise more inviting for play, these particular samples make noises when the "cash drawer" opens or the buttons on the built-in calculator are pushed.

The "cash-drawer" itself is not large enough to accommodate real paper money, so play paper money and plastic coins in various denominations are provided. The paper money has "Bank of Imco toy," "toy note" and "play money" printed on it, and the coins are made of silver colored plastic with "play money" stamped on them. A manually operated register tape provides the child another part to manipulate, but since it lacks any printing mechanism no transactions are recorded onto the tape.

The Court also considers the manner in which the merchandise is sold. While not determinative, it is accepted that "the marketing of an imported article is relevant in determining the proper classification of that item for tariff purposes." *See, e.g., Lukas American, Inc.* v. *United States*, 7 CIT 280, 282 (1984).

Plaintiff purchased the merchandise from a manufacturer of toy products and sold it in its stores in the toy departments. The articles were not sold by plaintiff in any retail outlet that did not have a toy department. One of the samples contains a "pulling label" from plaintiff's catalog center that refers to the merchandise as a "toy cash register." In its sales catalog, plaintiff listed the merchandise in a special "Toy Index" which has "obvious probative value" as to its proper classification. *See Montgomery Ward & Co.* v. *United States*, 62 Cust. Ct. 718, 724, C.D. 3853 (1969).

After weighing the evidence, the Court finds that the merchandise is chiefly used for the amusement of children and thus is a toy. The Court finds that the merchandise is not chiefly used as a calculator. Also, unlike in *Childcraft Education Corp.* v. *United States*, 742 F.2d 1413 (Fed. Cir. 1984), the Court is not persuaded that the merchandise is chiefly used for educational purposes.

Finally, plaintiff argues that the merchandise is not a toy because the amusement it engenders, if any, is not true amusement similar to that which a child receives when playing with a ball or top. According to plaintiff, the amusement intended by Congress when describing a toy in the TSUS is the merriment or jollity obtained from an article which is essentially a plaything. Plaintiff attempts

to align its merchandise with that discussed in cases which found a different type of amusement experienced by children using certain items such as *Louis Wolf*, 26 CCPA at 243 (involving a microscope set); *Western Stamping Corp.* v. *United States*, 61 Cust. Ct. 152, 289 F. Supp. 1016 (1968), *aff'd* 57 CCPA 6, 417 F.2d 316 (1969) (involving a typewriter); *F.F.G. Harper Co.* v. *United States*, T.D. 46423, 63 Treas. Dec. 948 (1933) (involving model parts of miniature steam engines).

Unlike the articles described in these cases, the Court finds that the subject merchandise does provide a type of amusement to a child similar to that received from an article which is essentially a plaything. The merchandise is designed to be used by young children "playing store" and the noises which accompany its use provide merriment. Such amusement is different than that experienced by children examining objects with a working microscope, typing letters on a functional typewriter or building models of miniature steam engines.

The Court concludes that the merchandise is chiefly used for the amusement of children and is properly classified as a toy under item 737.95, TSUS. Judgment will be entered accordingly.